Collette, Respondent, vs. Weed and another, Appellants.

*March 2 — March 22, 1887.*

*(1) Sale of chattels: Warranty: Parol evidence: Consideration. (2, 3) Pleading: Abatement of action prematurely brought.*

1. Although a bill of sale does not contain a warranty, it may be shown by parol that there was an oral warranty of quantity; and a written guaranty of quantity executed a day or two later than the bill

Collette vs. Weed and another.

of sale, in pursuance of an oral agreement made at the time of the sale, is based upon a sufficient consideration and is a binding part of the contract.

2. The fact that an action is prematurely brought should be pleaded in abatement.

3. Where all of a lot of logs should have been scaled before an action was brought for the shortage, and the plaintiff had caused all that he was able to find to be so scaled, the fact that a few more were discovered after the commencement of the action should not defeat the action, especially where that fact was pleaded not by way of abatement but as a defense on the merits.

APPEAL from the Circuit Court for *Manitowoc* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought to recover for an alleged shortage on a sale of logs made by the defendants to the plaintiff. The contract of sale upon which the action was founded was in writing, and the following are copies of the bill of sale and guaranty on which the action is founded:

"Know all men by these presents, that *A. Weed & Co.*, of the village of West Depere, in the county of Brown and state of Wisconsin, of the first part, for and in consideration of the sum of fifteen ($15,205.50) thousand and two hundred and five and fifty 50–100 lawful money of the United States to us in hand paid by *Henry Collette*, of the village of West Depere, in the county of Brown and state aforesaid, of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said party of the second part, his heirs, executors, administrators, and assigns, the following described goods, chattels, and personal property, to wit, one million nine hundred and sixty-two thousand (1,962,000) feet of pine saw-logs, together with two set of booms of twenty-three sticks each, with coupling and cross-chains complete, and one set with coupling chains, which are now lying in the Peshtigo river, at the harbor, and one million

above Peshtigo village, in Marinette county, Wisconsin, and marked with the letter ' V ' stamped on the end of log, and for side mark ꝑ, to have and to hold the same unto the said party of the second part, his executors, administrators, and assigns, forever; and we do, for ourselves, our heirs, executors, and administrators, covenant and agree to and with the said party of the second part, his executors, administrators, and assigns, to warrant and defend the sale of said goods, chattels, and personal property hereby made unto the said party of the second part, his executors, administrators, and assigns, against all and every person and persons whatsoever.

" In witness whereof we have hereunto set our hands and seals this 2d day of December, A. D. 1881.

"A. WEED & Co.    [Seal.]

" Signed, sealed, and delivered in the presence of J. H. SCOTT."

" Memorandum of agreement made and entered into this 2d day of December, 1881, by and between *Henry Collette,* of one part, and *A. Weed & Co.,* of the other part: Witnesseth, that the said *A. Weed & Co.* have this day sold to the said *Collette,* among other things, a quantity of saw-logs lying in the Peshtigo river, Marinette county, Wisconsin, estimated at 1,962,000 feet, with side mark ꝑ, and end mark V, and the said *Collette* has agreed to pay therefor the sum of $7.75 per thousand feet, and in notes and cash has paid them a considerable portion thereof. But it is agreed by the said parties that the said *Collette* shall retain the sum of $1,205.50 until all of said logs have been rafted and scaled; and, if it shall then be found that said logs shall hold out in quantity to the said estimate, the said *Collette* shall pay said *A. Weed & Co.* the sum last aforesaid; but, if said logs shall not hold out, then in that case the said *Collette* shall retain of said sum at the rate of $7.75 per thousand feet shortage, and pay only the balance, if any. The scale shall be ac-

cording to the rule and practice of the Peshtigo Co. in the purchase of logs. In case the shortage, if any, shall exceed in amount the sum of $1,205.50, as aforesaid, then in that case the said *Collette* shall have a claim against *A. Weed & Co.* for such excess.

" J. H. Scott.                     H. Collette.
" M. Hubbard.               _  A. Weed & Co."

Upon the trial the evidence showed that the guaranty contract was not reduced to writing and signed by the parties until a day or two after the bill of sale was executed and delivered, It is upon this fact_that the learned counsel for the defendants rely to defeat the plaintiff's recovering for the alleged shortage. This is the main point made by the defendants. They also insist that, if the plaintiff was entitled to recover at all for the shortage, he should have recovered only for the value of 375,921 feet.

The case was referred to a referee to hear, try, and determine. The referee found the following, among other facts:

" *Fourth.* That as part of the same transaction with said contract of sale, and in consideration thereof, the plaintiff and the defendants entered into a written agreement wherein and whereby the defendants guarantied that the said logs contained the number of feet above stated, which written agreement is on file herein, and is marked Exhibit 2.

" *Fifth.* That the terms and conditions of said written contract of guaranty were agreed upon by and between the parties thereto at the time of the making of said contract of sale, and in consideration thereof, although the same was not executed at said time, but within a few days thereafter."

" *Eighth.* That the logs mentioned in said bill of sale and contract did not amount to 1,962,000 feet, but to 1,166,620 feet, and no more, as duly determined by a scale of the same thereafter made as contemplated by said agreement.

"*Ninth.* That plaintiff has received said 1,166,620 feet of logs by virtue of said contract of sale as follows:

| | |
|---|---:|
| (1) During the year 1882, scale at mill according to method prescribed in contract..................... | 988,066 |
| (2) 146 logs lost in transit after delivery to tug-boat employed by plaintiff to tow same to his mill, estimated.......................................... | 24,333 |
| (3) Taken from river in 1883, Peshtigo Co.'s scale........ | 124,121 |
| (4) Taken from river in 1884, Peshtigo Co.'s scale........ | 10,100 |
| (5) Logs still in river, estimated...................... | 20,000 |
| Total quantity received......................... | 1,166,620 feet. |

"*Tenth.* That the difference between the quantity of logs guarantied to be conveyed by said bill of sale and the accompanying agreement, and the quantity actually so conveyed, is 795,380 ft.

"*Eleventh.* That the value of said shortage, at $7.75 per thousand, is $6,164.19."

These findings were duly excepted to by the defendants. The exceptions were overruled by the circuit judge at the hearing upon the report of the referee, and judgment was directed to be entered in favor of the plaintiff for the amount found due to him by the referee. The defendants duly excepted to the order of the circuit court affirming the report of the referee and directing judgment in accordance therewith.

The defendants appealed from the judgment.

For the appellants the cause was submitted on the brief of *Weisbrod, Harshaw & Nevitt.*

For the respondent there was a brief by *Vroman & Sale,* and oral argument by *Mr. Vroman.* They contended, *inter alia,* that the defense of premature action is in abatement and not in bar. *Archibald v. Argall,* 53 Ill. 307; *Palmer v. Gardiner,* 77 id. 143; *Carter v. Turner,* 2 Head, 52; *Clements v. Swain,* 2 N. H. 475. The defendants not having interposed this defense by way of special plea in abatement

waived it. *Sanford v. McCreedy*, 28 Wis. 106; *Smith v. Peckham*, 39 id. 418; *Johnston v. Wilson*, 2 N. H. 202; *Dutcher v. Dutcher*, 39 Wis. 660; *Plath v. Braunsdorff*, 40 id. 107; *Johannes v. Youngs*, 48 id. 101. The quantity of logs not scaled as per agreement when the action was commenced is too insignificant to abate the action, even if a plea in abatement had been interposed. 2 Parsons on Cont. 656; *Cabot v. Winsor*, 1 Allen, 546; *Chambers v. Jaynes*, 4 Pa. St. 39; *Rees v. Smith*, 1 Ohio, 52.

TAYLOR, J. It is claimed by the learned counsel for the appellants that on the day of the date of the bill of sale the contract of sale between the plaintiff and the appellants was completed, and that upon such sale there was no guaranty as to the quantity of logs sold; that they were sold as an entire lot, after the respondent had examined for himself; and that he took the risk as to the quantity in the lot of logs purchased. On the other hand, the respondent claims that he bought the logs without any knowledge as to the quantity in the lot; that he depended wholly upon the appellants' representations as to quantity, and upon an agreement on their part to guaranty the quantity by a written contract thereafter to be executed by them, and that, a few days after the delivery of the bill of sale, the appellants executed the written guaranty in pursuance of such agreement made at the time of sale.

That the written guaranty was executed by the appellants a few days after the bill of sale was executed, is not denied by the appellants, but they seek to avoid its effect by an allegation that there was no consideration to uphold it. It is said the case comes within the decisions of this court in *Congar v. Chamberlain*, 14 Wis. 258, 264, and *Morehouse v. Comstock*, 42 Wis. 626, 629, where it is held " that it is a general rule that a warranty must be made at the

time of the sale and be one of the terms of the contract, and that if it is made after the sale is complete or the contract performed, it will not be binding for want of a consideration. Chit. Cont. 397. But this is true only when there is no other consideration than the sale to support it." The difficulty of applying this rule to the case at bar is that the court and referee both find from the evidence that it was a part of the contract of sale that the vendors should and did guaranty the quantity of logs sold, and that the written guaranty was simply carrying out the terms of the sale, and so the purchase of the logs by the respondent was a sufficient consideration for the guaranty; that the guaranty was in fact a part of the terms of the original contract, and that the writing simply expressed what before existed in parol.

It is said that the findings of the referee upon this point are not sustained by the evidence. We think otherwise. It appears to us that the great weight of the evidence is in favor of the findings. The appellants having signed the guaranty in writing shortly after the delivery of the bill of sale, in which they impliedly admit that the sale was made upon the terms mentioned in said written guaranty, shows a sufficient consideration for the making of such guaranty, and is almost conclusive evidence that they had agreed to give such guaranty at the time the bill of sale was delivered. The finding of the referee is amply supported by the evidence on this question. That it is permissible to show by parol evidence that the vendor warranted the quantity of logs sold, notwithstanding the giving of the written bill of sale in which there is no such warranty made, is well supported by authority. Such evidence does not vary or contradict the terms of the bill of sale. See 2 Benj. Sales, § 943, note 14 (Am. notes by Charles Corbin); *Boothby v. Scales*, 27 Wis. 626; *Merriam v. Field*, 24 Wis. 640; *Cas-*

*sidy v. Begoden*, 38 N. Y. Super. Ct. 180; *Bennett v. Tregent*, 24 U. C. C. P. 565; *Schuyler v. Russ*, 2 Caines, 202; *Boorman v. Jenkins*, 12 Wend. 566; *Hargous v. Stone*, 5 N. Y. 73. If there had been no contract between the parties except the original written contract of sale, it is not clear that the plaintiff might not have recovered in this action upon an implied warranty that the quantity of logs sold was in fact the amount stated in such bill of sale. See *Turbell v. Bowman*, 103 Mass. 343; *Pickman v. Trinity Church*, 123 Mass. 1; *Mendenhall v. Steckel*, 47 Md. 453; *Marbury v. Stonestreet*, 1 Md. 152; *Hill v. Buckley*, 17 Ves. 401; *Stebbins v. Eddy*, 4 Mason, 417. But as the evidence clearly tends to prove, and the court has found, that there was an express verbal contract to warrant the quantity, and such contract was in fact reduced to writing in pursuance of such verbal contract, it is unnecessary to determine what the rights of the parties would have been under the bill of sale standing alone.

Upon the question as to the quantity of logs for which the plaintiff was entitled to recover under the agreement to make good the shortage, there was some conflict of evidence, but on the whole evidence the finding of the referee upon that question is fully sustained, and there is no sufficient reason for setting aside such finding.

It is also urged that the action was prematurely brought; that all the logs had not been scaled before the action was commenced. This was not set up by the answer, and is probably not available to the appellants. We think the evidence shows that the plaintiff had caused all the logs he was able to find to be scaled before he commenced his action, and the fact that a few were discovered afterwards should not defeat his action, especially as that defense was not interposed by way of abatement to the action, but as a defense on the merits. The court, in fixing the amount of the shortage, has allowed the appellants the quantity dis-

covered since the action was commenced, so that they are not injured by the fact that they were not discovered and scaled before the action was commenced.

*By the Court.*— The judgment of the circuit court is affirmed.